[No. 379.   January 19, 1890.]

## AUGUST KIRCHNER, APPELLEE, v. SARON M. LAUGHLIN, APPELLANT.

ASSUMPSIT FOR BREACH OF CONTRACT—TESTIMONY AS TO TESTIMONY OF WITNESS ON FORMER TRIAL—EVIDENCE.—The testimony of a witness to prove the testimony of a witness on a former trial, between the same parties and about the same subject-matter, is inadmissible, except in the case of the death or insanity of the witness, or when it appears at the time of the trial he is unable to be examined by reason of some physical disability, and that his deposition could not, by the exercise of due diligence, have been taken, or where the witness is beyond the seas, or is absent from the territory, and his whereabouts can not, by due diligence, be ascertained, or where the witness absents himself from the jurisdiction of the court, by procurement of the opposite party, after having been duly summoned to appear at the trial.

ID.—TESTIMONY OF STENOGRAPHER FROM HIS NOTES—EVIDENCE.—In such case the testimony of a stenographer, made from his notes, taken at a former trial, to refreshen his memory, can be regarded only as hearsay, the statute (Comp. Laws, 1884, sec. 548) having failed to declare their legal value.

ID.—INADMISSIBILITY OF DECLARATION OF AGENT WITHOUT PROOF OF FACT OF AGENCY—EVIDENCE.—The declarations of an alleged agent are only admissible when there is proof of the fact of the agency.

APPEAL, from a judgment for plaintiff, from the First Judicial District Court, Santa Fe County. Judgment reversed, and new trial ordered.

The facts are stated in the opinion of the court.

GILDERSLEEVE & PRESTON for appellant.

CATRON, KNAEBEL & CLANCY, and THOMAS SMITH for appellee.

BRIEF ON MOTION FOR REARGUMENT.

As to the availability of the objection to the admissibility of proof of the former testimony of an absent witness, see Danforth's U. S. Digest, 440.

Lord Tenterden admitted the testimony of a deceased witness given on a former trial of the same issue (a feigned issue out of chancery) although there was extant a deposition of the same witness taken for use on a later trial. Tod v. Earl of Winchelsea, 3 Carr. & Payne, 387. See, also, 1 Greenlf. Ev., sec. 163; 1 Whart. Ev., secs. 137, 178, 179, 180.

As to the evidence of agency, this court on the former hearing expressly ruled it to be sufficient to go to the jury. 17 Pac. Rep. 134. The court also said "no sufficient reason has been shown why it was withdrawn from the jury. Ib.

WHITEMAN, J.—This is an action in assumpsit brought by August Kirchner, appellee, to recover damages for the breach of a contract alleged to have been made by the plaintiff with the appellant, Saron N. Laughlin, and Joseph H. Wiley, on the ninth day of August, A. D. 1879, the contract having been signed and sealed by Wiley for himself and as the agent of Laughlin. Under this contract, Kirchner delivered to Wiley two thousand ewes, which Laughlin and Wiley were to care for for the the period of five years, and to pay and deliver to Kirchner annually, for the use of the same, five hundred wethers and five hundred fleeces of wool, and at the end of five years Laughlin and Wiley were to deliver to Kirchner two thousand ewes of like age, quality, and condition as those which should be delivered to them. Some time later, five hundred additional ewes and twenty-three rams were delivered by Kirchner upon an unsealed written agreement, dated September 14, A. D. 1881, which was signed in the name of Laughlin by Wiley as agent, and also for himself. This agreement provides, in effect, that the original contract should be enlarged so as to include the additional ewes and rams, under the same terms and conditions as were specified in the original

contract. The plaintiff prayed damages for the sum of $3,500, with interest and cost of suit. The defendant, Laughlin, interposed the pleas of non assumpsit and non est factum to the declaration, denying his signature to the instrument in writing sued on, and the authority of any one to execute it for him. The case was tried at the July term, A. D. 1885, of the district court of Santa Fe county, at which trial the court instructed the jury to return a verdict for the defendant, Laughlin. The plaintiff then carried the case by writ of error to the supreme court, which court, at the January term, 1888, reversed the judgment of the district court, and directed a new trial, which was had at the August term, A. D. 1888, and the plaintiff recovered a judgment in the sum of $3,200, and the defendant brings the case upon appeal to this court.

The appellant insists that the district court erred in permitting Harry S. Clancy, a witness in behalf of the appellee, to testify as to what William Breeden had testified to upon the former trial of the cause. The witness Clancy was the official stenographer of the court, and, upon being sworn as a witness, testified that he acted as stenographer upon the former trial; that upon that trial William Breeden was sworn and examined as a witness in behalf of plaintiff; and, upon being further interrogated, the witness Clancy testified as follows: "Question. Where is William Breeden? Answer. I am informed — I have seen a letter written by Mr. Breeden within the last two weeks from the state of Ohio. Q. State whether or not, on the former trial of this case, the paper I now hold in my hand was identified by Col. Breeden under oath. A. From my memorandum made on that paper it appears that it was introduced in evidence upon the former trial of this cause as an exhibit. Q. State whether or not the memorandum in pencil, 'A. H. S. C.,' is an original

*Marginal note:* BREACH of contract: testimony of official stenographer from notes taken on former trial: evidence.

note made by you as stenographer on this exhibit, when introduced in evidence. A. It is. Q. Are you acquainted with the handwriting of William Breeden? A. I am. Q. State, if you know, in whose handwriting the body of this instrument is written. A. It is in the handwriting of Col. William Breeden. Q. Do you recollect, in substance, what Col. Breeden testified to as to the signatures to this paper? A. I am able to testify on that point, after refreshing my memory by referring to the original shorthand notes. Q. Have you looked at those notes? A. Yes, sir. Q. State, in substance, what Col. Breeden testified then on that subject. A. Col. Breeden testified that this paper was in his handwriting, and that it was executed by Joseph Wiley, for himself and for Saron N. Laughlin, and also that the additional agreement on the last page was signed by Mr. Wiley for himself and for Mr. Laughlin.''

The testimony of the witness Clancy was permitted to go to the jury, notwithstanding the objection of the defendant Laughlin. It was shown upon the trial by the testimony of M. A. Breeden, who is the brother of the absent witness, William Breeden, that he, William Breeden, his wife and family, resided in the town of Santa Fe, New Mexico; that he left the territory of New Mexico in July, and that the witness believed him to be in the state of Ohio at that time; that he had received a letter from him within a week or ten days previous to that time; that he could not state positively whether his brother was on the road or in the territory, but that his understanding was that he was in the state of Ohio, and he did not know when he was expected to return. In the decisions of the courts of the several states that have passed upon the question of the admissibility of the evidence of a witness given upon a former trial of a case, there is great lack of uniformity, and the law is far from being settled. Several courts have held that,

where a witness is beyond the jurisdiction of the court, evidence is admissible of his testimony given at a former trial between the same parties, with reference to the same subject-matter. Magill v. Kauffman, 4 Serg. & R. 317; Clinton v. Estes, 20 Ark. 235; Schearer v. Harber, 36 Ind. 536; Long v. Davis, 18 Ala. 801; Wilder v. St. Paul, 12 Minn. 192; People v. Devine, 46 Cal. 45; 1 Greenl. Ev., sec. 163. It is held, on the contrary, that where the residence of the witness is known, his deposition should be taken, unless it be shown that the circumstances of the case are such as to prevent the taking of his deposition. Wilbur v. Selden, 6 Con. 164; Gerhauser v. N.. Brit. & Mer. Insurance Co., 7 Nev. 174; Berney v. Mitchell, 34 N. J. Law, 341; Le Baron v. Crombie, 14 Mass. 234; 17 Ill. 427. There would seem to be less force in the position maintained in the cases first cited, at the present time, than there may have been a quarter of a century ago. The imperfect mail facilities and slow methods of travel which existed then made the taking of a deposition of a witness residing or being in another state difficult and uncertain of accomplishment, and consumed a great deal of time; whereas, under the fast mail system and rapid railroad communication with all parts of the country maintained at the present day, the taking of a deposition of a witness in another jurisdiction is accomplished with comparatively little expenditure of time, trouble, or money. In Burton v. Driggs, 20 Wall. 133, cited by the appellee, the court held that, a deposition taken in the case having been lost, a copy of the deposition taken under the direction of the clerk, and by him compared and certified to be a true copy, might be read in evidence in place of the original (the witness being out of the jurisdiction of the court.) The objection was made that "the copy was not the original." "This, as a fact," the court say, "was self-evident, but, as a ground of objection, it was wholly

indefinite." There was no suggestion made "that the place of the lost deposition could only be supplied by another one of the same witness, retaken, and that secondary evidence was inadmissible to prove the contents of the former;" and the case, for that reason, was decided upon the ground that the contents of any written instrument, judicial records, and all other documents of a kindred character, lost or destroyed, may be proved by competent evidence; that there was nothing in the objection made to the introduction of the copy to take the case out of the general rule; and the decision seems to intimate that, if a proper objection had been made, the case would have been decided differently. The requirements of the statute of New Mexico (Comp. Laws 1884, sec. 548) are that the stenographer of the court shall take an oath faithfully to discharge his duty as such, and that the shorthand notes taken by him shall, at the end of each term of court, be deposited in the office of the clerk of the court, but the statute does not declare the legal value of such notes as evidence. The testimony of the witness Clancy, as to what the witness William Breeden had testified to upon the former trial, therefore, was but hearsay evidence, his memory being refreshed by a reference to his shorthand notes of the former trial; which notes may have possessed a measure of value, as evidence somewhat higher than hearsay evidence, by reason of their having been taken by a sworn officer of the court, and the notes having been in the custody of the clerk of the court during the interval between the first and second trial, but were lacking in value as evidence of a high degree, because of the failure of the statute to declare their legal value. The record of this case does not suggest any reason why the deposition of the witness William Breeden could not have been taken. We are of the opinion that neither legal principle nor sound policy will justify the admission of the evidence given on a

former trial, between the same parties and about the same subject-matter, except in case of the death or insanity of the witness, or where it appears at the time of the trial that, by reason of physical disability of a permanent charter, he is unable to be examined, and that, by the exercise of due diligence, his deposition could not have been taken, or where the witness is beyond the seas, or where the witness is absent from the territory, and his whereabouts can not, by due diligence, be ascertained, or where, by the procurement of the opposite party, the witness absents himself from the jurisdiction of the court, after having been duly summoned to the trial.

Upon the trial of the case, the appellee, August Kirchner, was permitted to testify in his own behalf, as to what Col. Breeden stated to the appellee and Joseph H. Wiley, in the absence of appellant, viz., that a certain letter, which was the subject of a conversation between the persons named, was in the handwriting of appellant, and also as to the contents of the letter, and the admission of this testimony is assigned by the appellant as error. The testimony of the appellee upon this point was as follows: "The first year I received my 'partido' complete. The second year comes Mr. Wiley, and says: 'Chiquito, I received a letter from Mr. Laughlin. We are having a bad year this year, and now I want you to do something for me.' I said: 'All right; you come to Col. Breeden's office.' We went there, and he took out his letter from Mr. Laughlin. Col. Breeden read it, and said: 'Chiquito, that is Mr. Laughlin's handwriting. He says he want you to release him from the partido for this year.' I said: 'I will do so.' I told Mr. Breeden, 'I will do so, because it is a bad year.'" The appellant objected to the testimony. The objection was overruled. The court, in passing upon the objection, stated that any-

*DECLARATIONS of agent without proof of fact of agency: evidence.*

thing that was said between Kirchner, Col. Breeden, and Wiley was competent.

The evidence would be competent only in the view that Breeden and Wiley were the agents of Laughlin, and were at that time acting within the scope of their authority. If they were not his agents, then any statement they may have made concerning the letter would not be competent. The case was prosecuted upon the theory that Wiley was the agent of Laughlin, and the purpose of this evidence was to show that Laughlin, by asking to be released from paying the partido for that year, admitted his liability under the contract made by Wiley in his name. Laughlin testified that Wiley was not his agent; that he never authorized him to make such a contract, or to sign his name; and that he did not know until the year 1883 that such a contract had been made in his name, and that, when informed of it, he immediately repudiated the contract, and went to Kirchner and demanded that his name be taken off. Wiley testified that "Laughlin was never in any way interested in the contract, and never gave me at any time permission or authority to sign his name to the Kirchner sheep contract, or to enter into any contract for him with Mr. Kirchner in regard to sheep, and Mr. Laughlin never at any time or place ratified the contract with Kirchner sued on in this cause." His testimony is entirely silent upon the point as to whether he did or did not sign Laughlin's name to the contract, and in this connection the testimony of the witness M. A. Breeden may have some significance. This witness testified that the name of Saron N. Laughlin, on the last page of the contract was in the handwriting of William Breeden. We think the evidence of the appellee, Kirchner, as to the declarations of Breeden and Wiley concerning the letter claimed to have been written by Laughlin, was improperly admitted, for the reason that the evidence in the case does not satisfactorily

establish that either Breeden or Wiley was, at the time, an agent of Laughlin. The declarations of an agent are only admitted when the agency is proved. To permit the proving of an agency by proving the declarations of the agent would be assuming it without that which is a prerequisite to the admissibility of the declarations. It would be without reason or logic to say that an agent's declarations were admitted because he was an agent, and that he was an agent because his declarations were admissible. "Hence the rule is settled that such declarations can not be received unless there be proof of the agency aliunde." Whart. Ev., sec. 1183; Breckenridge et al. v. McAfee, 54 Ind. 144; Jordan v. Stewart, 23 Pa. St. 244; Williams v. Davis, 69 Pa. St. 21.

Other errors are assigned by the appellant, but, believing that the determination of the questions already considered in favor of the appellant will entitle him to a new trial, we will not stop to consider the other questions presented by the record. The judgment of the district court will be reversed, and the cause remanded for a new trial.

LONG, C. J., and LEE and McFIE, JJ., concur.