R. Gordon LEVI, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 15, 1965.

As Modified on Denial of Rehearing
April 22, 1966.

Royce Pulliam, Cynthiana, William H. McCann, Brown, Sledd & McCann, Lexington, for appellant.

Robert Matthews, Atty. Gen., George F. Rabe, Frankfort, for appellee.

HILL, Judge.

Appellant seeks a reversal of a verdict and judgment finding him guilty of voluntary manslaughter, and fixing his punishment at 15 years in prison. He contends (1) he was entitled to an instruction on self-defense and involuntary manslaughter, (2) the trial court committed error in answering a written question submitted by the jury during his absence, and (3) that he was entitled to a new trial on the ground one juror had expressed an opinion before the trial.

Appellant, age 65, six feet three inches tall, weighing 215 pounds, was charged with killing William Hoffler, a man between 70 and 75 years of age, five feet six inches tall, and weighing 135 pounds.

Apparently the appellant is a thrifty man from the evidence that he owns 60 houses, including a one or two story building with a basement, the scene of the alleged crime. Beds were rented in this building at the rate of one dollar per night for basement lodging and two dollars per night for beds on the first floor. This house is located on the appropriately named "Pleasant Street" in Cynthiana, Kentucky.

Deceased "signed in" for a bed February 11, 1964, and was found dead in his upstairs room the following day. During the night of the 11th and on the following day, about seven customers were lodged in the house. There were two women, one the daughter of appellant, and the other, according to some testimony, a Lesbian. There was considerable drinking also.

Dr. James T. McClelland, a pathologist, performed an autopsy and testified deceased had a deep laceration above the right eye, an abrasion over the right cheek and yet another laceration on the bridge of his nose, so that his nasal bones were "in pieces"; that there was bleeding from these injuries, from which he concluded deceased received the foregoing injuries before his chest injuries. The doctor stated he applied pressure to the chest of deceased and was amazed to find there was no support. He found fractures of the second, third, fourth, fifth, sixth and seventh ribs of the right side, and fractures to the third, fourth, fifth, sixth, seventh and eighth ribs on the left side. The breastbone was fractured. The pleural cavity was filled with blood; the right atrium of the heart was ruptured and exploded, and all the blood spilled out into the chest cavity; the heart was squeezed against the backbone and had ruptured like a balloon; the liver was broken so that one-half of the left part was lying free. He testified deceased also had a ruptured groin; that the mouth of deceased contained upper and lower plates, the latter broken.

Appellant does not argue the circumstantial evidence was not sufficient to convict, but he says inasmuch as all of the evidence was circumstantial, he was entitled to an instruction on self-defense and involuntary manslaughter.

Under Criminal Law, 23A C.J.S. § 1190, the general purpose of instructions in criminal cases is thus stated:

"The sufficiency of instructions must be determined by the facts in each case. The purpose of instructions being to define, and direct the attention of the jury to, the legal principles applicable to the particular case, instructions should be full, clear, and explicit, giving to the jury all of the law so far as it relates to the issues proved or claimed to be proved, if such issues are sustained by any evidence or by any legitimate inference therefrom."

Our question is whether there was any evidence or *legitimate inference from the evidence* that the crime was or could be classified as involuntary manslaughter. KRS 435.022 defining and providing a

penalty for involuntary manslaughter is as follows:

"(1) Any person who causes the death of a human being by an act creating such extreme risk of death or great bodily injury as to manifest a wanton indifference to the value of human life according to the standard of conduct of a reasonable man under the circumstances shall be guilty of involuntary manslaughter in the first degree and shall be confined in the penitentiary for not less than one nor more than fifteen years.

"(2) Any person who causes the death of a human being by reckless conduct according to the standard of conduct of a reasonable man under the circumstances shall be guilty of involuntary manslaughter in the second degree and shall be imprisoned in the county jail for a term not exceeding twelve months or fined a sum not exceeding five thousand dollars or both."

■ We cannot believe the atrocious manner in which deceased met his death was no more than a manifestation of a "wanton indifference to the value of human life," or "reckless conduct," as defined in the involuntary manslaughter statute above quoted. We conclude from the evidence of the acts which produced death of Hoffler, that such acts must have been committed only by one having malice aforethought, or in sudden heat and passion, or in sudden affray upon provocation ordinarily calculated to excite passion beyond control. Nothing less.

■ Furthermore, the penalty fixed by the jury of 15 years was far greater than the minimum penalties for both voluntary and involuntary manslaughter. It is obvious that had an involuntary instruction been given, it would have been ignored by the jury. Bartley v. Commonwealth, 300 Ky. 152, 188 S.W.2d 102 (1945).

■ Neither do we find appellant was entitled to an instruction on self-defense. True, appellant had a slight injury on his face, but he testified he received it when falling over a dog into a door facing. This is not one of those typical cases where there was evidence of a struggle, and we have held a self-defense instruction proper. In Blackburn v. Commonwealth, Ky., 349 S.W.2d 197 (1961) defendant was convicted on circumstantial evidence and contended he was entitled to a self-defense instruction. In answer to his contention the Court said:

"We have adopted the rule that where the evidence is wholly circumstantial in a case like the one before us, if there is no evidence of a struggle or if the facts do not reveal the manner in which the deceased met death, such an instruction (self-defense) should not be given."

■ Appellant next argues his substantial rights were violated by a written question sent the judge and his written answer thereto. During deliberations the jury sent the trial judge the following written communication:

"What would be the time before parole would be granted upon the following:

| | Answer: |
|---|---|
| 21 Years, | _____ |
| 10 Years, | _____ |
| 5 Years, | _____ |
| 2 Years, | _____ |

Thank you,
Jim Cole, Foreman."

It is shown by the affidavit of the trial judge, that after free discussion with attorneys for defendant and the Commonwealth, he returned the written question with the following notation thereon:

"This is strictly a matter for the Parole Board. You are not to consider it in any way."

The record does not show defendant objected to this incident. From the hearing on defendant's motion and grounds for new trial, it is indicated the objection was raised "15 or 20 minutes" after the jury verdict. It is conceded first, however, the incident did occur at a time and while the trial judge and attorneys were in a conference room and out of the presence of the defendant. We do not consider this incident to be a substantial "proceeding" in defendant's trial within the meaning of the law entitling defendant to be present at every stage of the proceedings. There was nothing in the incident in any manner prejudicial to the rights of defendant.

Finally, appellant complains one of the jurors formed and expressed an opinion before the trial and failed to disclose it on voir dire examination. A transcript of such examination of the juror, McClanahan, properly certified by the court reporter, is in the record. It shows the juror freely admitted he had formed an opinion, but said he could disregard it and require the Commonwealth to prove its case beyond a reasonable doubt. He was not asked whether he had expressed such opinion. He admitted to counsel for defendant he was a life-long friend to defendant, and the assistance given by counsel for defendant to this juror in his leading questions clearly indicated he was a welcome juror for defendant. Furthermore, this record does not show defendant challenged this juror or made any objection to his acceptance until after the verdict. That was too late. KRS 29.025. At any rate, this juror demonstrated his veracity when he freely admitted he had formed an opinion. The trial judge believed he could disregard his previously formed opinion by his failure to excuse. Such a juror is qualified. Smith v. Commonwealth, 100 Ky. 133, 37 S.W. 586 (1896); Coates v. Commonwealth, 255 Ky. 18, 72 S.W.2d 714 (1934).

We find no error substantially affecting the rights of appellant and accordingly affirm the judgment.