[Crim. No. 173.   Third Appellate District.—February 26, 1912.]

## THE PEOPLE, Respondent, v. JOHN LIGGETT, Appellant.

CRIMINAL LAW—STATUTORY RAPE—INTERCOURSE WITH YOUNG GIRL—SUPPORT OF VERDICT—ADMISSION OF GUILT—TESTIMONY OF PROSECUTRIX.—Where the defendant was charged with the crime of statutory rape, by sexual intercourse with a young girl twelve years of' age, of which he was convicted, it is held that evidence which justified the jury in believing that he admitted his guilt, taken together with the testimony of the prosecuting witness, which was direct and unmistakably established the charge, if believed by the jury, amply supported the verdict.

ID.—SURPRISE BY WITNESS FOR PEOPLE—CONTRARY EVIDENCE ON PRELIMINARY EXAMINATION — IMPEACHMENT — RECORD NOT PROVED — IMMATERIAL CROSS-EXAMINATION.—Where a witness for the people gave surprising evidence contrary to her evidence on preliminary examination, the record of such examination is not admissible as independent proof, but merely to lay the foundation for impeachment of her surprising evidence; but where the preliminary examination was not introduced, a question to the witness by defendant on cross-examination as to whether she was told by the parents of the child to testify as she did at the preliminary examination was immaterial.

ID. — EVIDENCE OF PHYSICIAN — INTERCOURSE EFFECTED — RUPTURED HYMEN — VENEREAL INFECTION.—Evidence of the physician who examined the young girl was admissible, for the purpose of showing that sexual intercourse had been effected, that she had a ruptured hymen, and that there were evidences of venereal infection. Each of these circumstances tended to show intercourse.

Id.—Evidence of Prior Unchaste Repute or Conduct Inadmissible—Absence of Specific Offer as to Cause for Venereal Infection. Evidence that the prior reputation of the prosecutrix was bad in respect of chastity, or a mere offer to prove prior sexual intercourse of other persons with her, was inadmissible, and could not justify the defendant's intercourse with her while under the age of consent. Nor can such evidence be justified on the ground of the testimony of the physician as to her venereal infection, and that the defendant may now show that someone else "has done that act," in the absence of any specific offer to show that the venereal infection was or may have been caused by some other person than the defendant.

Id.—Proper Instruction as to Testimony of Prosecuting Witness. The court properly instructed the jury that "while it is the law that the testimony of the prosecuting witness should be carefully scanned, still this does not mean that such evidence is never sufficient to convict, and if you believe the prosecuting witness, it is your duty to render a verdict of guilty." In this case the act of copulation constituted the offense, and the intent with which the defendant committed the act is immaterial. The prosecuting witness testified to the act, and if the jury believed her, his guilt would necessarily follow.

Id.—Instruction as to Reasonable Doubt—Elaboration upon Definition of Justice Shaw not Approved—Reversal not Justified.— While it is not approved that trial courts should attempt any elaborate improvement upon the often approved definition of reasonable doubt given by Chief Justice Shaw, and the elaboration thereupon by the trial court is not an improvement, yet this court finds nothing in it to justify the reversal of the cause.

APPEAL from a judgment of the Superior Court of Yuba County, and from an order denying a new trial. K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

W. H. Carlin, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was convicted of the crime of rape alleged to have been committed, about the twentieth day of July, 1911, on a child of the age of twelve years and was sentenced to serve twenty years in the Folsom penitentiary.

Defendant appeals from the judgment of conviction and from the order denying his motion for a new trial.

It is claimed that the verdict of guilty rested on the testimony of the prosecuting witness and upon the testimony of her father and mother as to what occurred at a conference with the defendant about August 4th, following the alleged crime. The girl's testimony was direct and unmistakably established the charge, if believed by the jury, which we must assume it was. On August 4, 1911, the parents of the girl, having had their suspicions aroused of defendant's guilt, called him to account in the girl's presence and in the presence of one Mrs. Slaughter. These witnesses do not agree in all particulars as to what then occurred, but there was testimony of what took place at this interview with the defendant which justified the jury in believing that he admitted his guilt. This testimony together with that of the prosecuting witness amply supported the verdict.

Some errors are claimed to have occurred in the rulings of the court to defendant's prejudice, which will be noticed.

At the interview with defendant, above referred to, Mrs. Slaughter was present. Called as a witness for the people, she testified that defendant, when charged with the crime, denied it. When asked whether he at any time during the conversation acknowledged that "he had anything to do with the child," she answered, "Well, I don't remember just exactly that he did." Some further examination of the witness showed to the satisfaction of the court that the district attorney was surprised by her answers and permitted him to call her attention to her testimony at the preliminary examination, at which she testified that defendant admitted his guilt. The court ruled that this testimony could not be used as evidence in the trial, but might be used to show that the district attorney was surprised by the answers of the witness and could be used for purposes of impeachment. Counsel for defendant then asked some questions of the witness concerning what she said to him, previous to the trial, about this same interview with defendant and whether she did not then say to counsel that defendant denied his guilt. It is not quite clear from the record whether or not counsel was laying the ground for the impeachment of the witness or desired to get her statement made out of court in the record. The court called coun-

sel's attention to her testimony in which she had testified that defendant denied his guilt. Counsel for defendant then said: "If that is understood, all right." The question put to the witness on cross-examination as to whether the parents of the prosecuting witness had not told her when she went to the preliminary examination she must testify against defendant was immaterial. The testimony given at the preliminary was not before the jury.

Witness, Dr. Miller, was called by the people and testified that he believed intercourse had been effected. He was asked if he discovered that the child was suffering from any disease. Defendant objected as immaterial and incompetent; that there is no issue involving the disease of the prosecuting witness and there is no evidence that defendant ever had a disease. The court ruled that it was admissible for the same reason that absence of the hymen was shown, that is, as a circumstance tending to show intercourse. The witness answered that "there were evidences of venereal infection." We think the evidence was admissible. In this connection defendant calls attention to the testimony of a character witness, Mr. Pringle, who testified as to the reputation of the prosecuting witness for truth, honesty and integrity, that it was bad. He was asked her reputation for chastity, to which the district attorney objected. Counsel for defendant urged that the testimony of Dr. Miller opened the way to this testimony; that defendant could now show that some other person "has done that act."

"The Court: It does not make any difference whether the child was a moral or immoral child. It does not make any difference what her character was, if she was under the age of sixteen years and this defendant had intercourse with her, he violated the law. It does not make any difference whether she was a pure child or not. She may have been as immoral as it is possible for a child to be. That does not excuse him for doing it.

"Mr. Carlin: If he is guilty.

"The Court: Yes, I assume that he is not guilty. I have a right to assume that. It is no excuse for anyone doing it, however. A man cannot justify himself for doing this crime by showing that the girl was immoral or impure.

"Mr. Carlin: Couldn't he show that probably someone else had done it?

"The Court: No, that does not give the defendant a right to do it.

"Mr. Carlin: We might show that someone else might have done it. Cannot we now account for the conditions which Dr. Miller found, outside of this man? We want to account for that. Well, all right. Exception. We will offer to prove that some person or persons, not the defendant, within a year prior to the fourth day of August, 1911, had sexual intercourse with Mabel Millard.

"The Court: I assume that there had been evidence introduced on that question. The doctor's testimony went to prove that, that she had been tampered with.

"Mr. Carlin: But we offer to prove now that it was someone else and not the defendant that did it.

"The Court: You cannot prove that.

"Mr. Carlin: All right, take the witness. Exception.

"The Court: You can prove that he did not do it but you cannot prove that someone else did it."

We perceive no error in the rulings. In *People* v. *Currie*, 14 Cal. App. 67, [111 Pac. 108], relied on by defendant, the prosecuting witness had testified that the defendant had sexual intercourse with her on a particular date and that she gave birth to a healthy, perfectly formed child on a particular date, about eight months after the alleged assault on her.

Pregnancy had been shown by the prosecution as evidence of defendant's guilt. It was held error not to allow evidence of her sexual relations with other men to test the truthfulness of this damaging fact of pregnancy. The reputation of the prosecutrix for chastity was immaterial as she was under the age of consent. The colloquy between counsel and the court as to what proof might be made in rebuttal of any inference that defendant was responsible for the diseased condition found by Dr. Miller does not raise the question of the admissibility of such rebuttal evidence. Counsel did not offer any evidence or state that he could produce evidence that this venereal condition was or might have been produced by some person other than defendant. His offer was "that some person or persons, not the defendant, within a year prior to the

fourth day of August, 1911, had sexual intercourse with Mabel Millard.'' Such evidence was inadmissible.

Error is claimed in giving the following instruction: ''While it is the law that the testimony of the prosecuting witness should be carefully scanned, still this does not mean that such evidence is never sufficient to convict; and if you believe the prosecuting witness, it is your duty to render a verdict of guilty. By the law of this state a female child under the age of sixteen years is incapable of giving legal consent to an act of sexual intercourse, so that every act of carnal connection with such a child by one not her husband will constitute the crime of rape whether with or without the consent of such child, and in this case, if you believe from the evidence beyond a reasonable doubt, that the defendant had sexual connection with the prosecuting witness on or about July 20, 1911, as alleged in the information, and that at the time she was under the age of sixteen years and not the wife of the defendant, then the defendant is guilty of rape and the jury should so find.''

Defendant calls attention to the following paragraph— ''and if you believe the prosecuting witness it is your duty to render a verdict of guilty''—as the basis of his objection, for the reason that it ''singles out a particular witness''; citing *People* v. *Fernandez,* 4 Cal. App. 314, [87 Pac. 1112]; *People* v. *Johnson,* 106 Cal. 294, [39 Pac. 622]; *People* v. *Barker,* 137 Cal. 557, [20 Pac. 617].

The cases cited were instances of assault with intent to commit rape. There the question of intent with which the assault was made was the material element in the cases, and it was held that the court had no right ''to put a state of facts to the jury which would bar them from finding the intent to be other than that charged by the information.'' Said the court: ''The defendant may have done all the things charged against him by the evidence of the prosecutrix, and still have been possessed of no intent to commit rape.'' (*People* v. *Johnson,* 106 Cal. 294, [39 Pac. 622].) In the case here the act of copulation constituted the offense and the intent with which the defendant committed the act is immaterial. The prosecuting witness testified to the act, and if the jury believed her his guilt must necessarily follow. There was, therefore, no error in the instruction.

The only remaining alleged error pointed out is the refusal of the court to give the defendant's proposed instruction on reasonable doubt.  It was refused "because elsewhere given." The instruction given embodies most of the definition of reasonable doubt found in the oft-approved instruction given by Chief Justice Shaw.  It also contains some explanatory comments or an elucidation which the learned trial judge conceived proper to aid the jury in their effort to comprehend Judge Shaw's definition.  Defendant complains that "The jury was by the instruction practically lectured upon the subject and warned that they should be very careful about this reasonable doubt.  In fact, they were practically told that our old friend 'reasonable doubt' is but a figment of the imagination and not to be taken seriously. . . . Without intending to be facetious before this honorable court, we wish to say that it reads like an assault upon an old, a revered and a valued friend."  The supreme court has given many cautionary signals warning trial courts against attempting elaborate improvements on a definition which has met with universal approval needing no explanation.  We have carefully examined the instruction in question and, while we do not think it an improvement on the oft-given instruction, we find nothing in it to justify the reversal of the cause.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.